UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORIO MARTINEZ SANCHEZ,<br><br>       Plaintiff,<br><br>  v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration,<br><br>       Defendant. | Case No. CV 12-4061-SP<br><br>**MEMORANDUM OPINION AND ORDER** |

## I.

## INTRODUCTION

On May 10, 2012, plaintiff Gregorio Martinez Sanchez filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of disability insurance benefits ("DIB"). Both plaintiff and defendant have consented to proceed for all purposes before the Magistrate Judge pursuant to 28 U.S.C. § 636(c). The parties' briefing is now complete, and the court deems the matter suitable for adjudication without oral argument.

Two issues are presented for decision here: (1) whether the Administrative

Law Judge ("ALJ") properly discounted plaintiff's credibility; and (2) whether the ALJ erred at step five. Memorandum in Support of Plaintiff's Complaint ("Pl. Mem.") at 4-10.

Having carefully studied, inter alia, the briefs submitted by the parties and the Administrative Record ("AR"), the court finds that the ALJ erred. The ALJ improperly discounted plaintiff's credibility and erred at step five. The court therefore reverses the Commissioner's decision denying benefits and remands for further proceedings consistent with this opinion.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was fifty-four years old on the date of his November 30, 2010 administrative hearing, went to school in Mexico and has the equivalent of an eighth-grade education. *See* AR at 29, 35. Plaintiff is illiterate and unable to communicate in English. *Id.* at 31, 43. His past relevant work includes employment as a construction worker. *Id.* at 43.

Plaintiff filed for DIB on June 9, 2009, alleging that he has been disabled since June 10, 2008. *Id.* at 112-115. Plaintiff's application was denied, after which he filed a request for a hearing. *Id.* at 57-60, 61-62.

On November 30, 2010, plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ. *Id.* at 29-48. The ALJ also heard testimony from a vocational expert ("VE"), Freeman Leeth. *Id.* at 41-46. On January 12, 2011, the ALJ affirmed the denial of plaintiff's request for benefits. *Id.* at 13-25.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff has not engaged in substantial gainful activity since his alleged disability onset date. *Id.* at 21.

At step two, the ALJ found that plaintiff suffers from severe impairments consisting of: left shoulder acromioclavicular separation, status post surgical reconstruction; medial meniscal tearing and chrondromalacia of the patella of the

right knee, status post right knee arthoscopy; and partial medial meniscectomy and chondroplasty. *Id.*

At step three, the ALJ determined that the evidence does not demonstrate that plaintiff's impairments, either individually or in combination, meet or medically equal the severity of any listing set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 21-22.

The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[1] and found him able to: "lift 25 pounds frequently and 50 pounds occasionally"; "stand and/or walk 6 hours in an eight-hour workday; unlimited in sitting." *Id.* at 22. She found plaintiff unable to climb ropes, ladders, and scaffolds, but able occasionally to climb, stoop, kneel, crouch, balance, and crawl. *Id.* With his "left upper extremity," plaintiff would be "able to perform only occasional overhead reaching." *Id.*

The ALJ found, at step four, that plaintiff is not capable of performing his past relevant work as a construction worker. *Id.* at 23.

At step five, the ALJ determined that, based upon plaintiff's age, education, work experience, and RFC, plaintiff could perform a significant number of jobs in the national economy, including machine feeder, sorter, inspector, and ticketer/labeler. *Id.* at 24. Consequently, the ALJ concluded that plaintiff did not suffer from a disability as defined by the Social Security Act. *Id.* at 25.

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. *Id.* at 1-6, 12. The ALJ's decision stands as the

---

[1] Residual functional capacity is what a claimant can still do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

final decision of the Commissioner.

## III.

## **STANDARD OF REVIEW**

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001). But if the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001). However, "the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was 'inconsequential to the ultimate nondisability determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). However, if the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th

1 Cir. 1992)).

## IV.

## DISCUSSION

**A.    The ALJ Failed to Provide Clear and Convincing Reasons for Discounting Plaintiff's Subjective Complaints**

Plaintiff argues that the ALJ failed to make a proper credibility determination. Pl. Mem. at 6-9. Specifically, plaintiff contends that the ALJ did not provide clear and convincing reasons that are supported by substantial evidence for discounting plaintiff's credibility. *Id.* This court agrees.

An ALJ must make specific credibility findings, supported by the record. Social Security Ruling ("SSR") 96-7p.[2] To determine whether testimony concerning symptoms is credible, an ALJ engages in a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, an ALJ must determine whether a claimant produced objective medical evidence of an underlying impairment "'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if there is no evidence of malingering, an "ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003). An ALJ may consider several factors in weighing a claimant's credibility, including: (1) ordinary techniques of credibility evaluation such as a claimant's

---

[2]  "The Commissioner issues Social Security Rulings to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the SSA. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001) (internal citations omitted).

1 reputation for lying; (2) the failure to seek treatment or follow a prescribed course
2 of treatment; and (3) a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d
3 1035, 1039 (9th Cir. 2008); *Bunnell*, 947 F.2d at 346-47.

4       The ALJ did not expressly make a first step finding, but it is implied that
5 there was objective medical evidence of an underlying impairment which could
6 reasonably be expected to produce the symptoms alleged. *Lingenfelter*, 504 F.3d
7 1036. At the second step, because the ALJ did not find any evidence of
8 malingering, the ALJ was required to provide clear and convincing reasons for
9 discounting plaintiff's credibility.

10       Read liberally, the ALJ's decision in the present case suggests three bases for
11 rejecting plaintiff's credibility: (1) the objective medical evidence; (2) plaintiff's
12 alleged inconsistency in reporting his symptoms; and (3) conservative treatment. *Id.*
13 at 22-23.

14       As to the first basis, the absence of fully corroborative medical evidence
15 cannot form the sole ground for rejecting the credibility of a claimant's subjective
16 complaints. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir.2005) ("lack of
17 medical evidence" can be "a factor" in rejecting credibility, but cannot "form the
18 sole basis"). Because the other two bases are insufficient, as discussed below, this
19 first ground cannot adequately support the credibility determination.

20       As to the second basis, the ALJ materially mischaracterized the record. The
21 ALJ notes that the December 2009 report from the agreed medical examination
22 ("AME") "does not relate complaints of marked impairment in walking and
23 standing." AR at 23. This is not true. In fact, the report states that plaintiff
24 complained of "[s]oreness, aching and sharp pain that is increased by standing [and]
25 walking." *Id.* at 413. The ALJ's mischaracterization of the record of plaintiff's
26 consistency in reporting his symptoms fatally infects the credibility determination.
27 *See Regennitter v. Commissioner*, 166 F.3d 1294, 1297 (9th Cir. 1999) (ALJ's
28 inaccurate characterization of the evidence of record rendered ALJ's credibility

determination invalid).

As to the third basis, the ALJ's mischaracterization of the record continues. The ALJ suggests that she found plaintiff's complaints incredible based on supposedly conservative treatment. Specifically, she states that plaintiff was not using narcotics-based pain medication. AR at 23. The ALJ seems to ignore, however, that plaintiff had surgery on his shoulder and his knee and also had a local injection in his shoulder. *Id.* at 168, 412. Surgery is not conservative treatment. *See, e.g., Loban v. Prudential Ins. Co. of Am.*, 262 F.App'x. 793, 794 (9th Cir. 2003) (acknowledging that surgery and conservative measures are at different ends of the treatment spectrum). Thus, the ALJ's apparent rejection of plaintiff's credibility based on conservative treatment as indicated by non-use of strong narcotics is not justified.

In sum, the reasons the ALJ provided for discounting plaintiff's credibility were not clear and convincing.

**B. The ALJ Improperly Determined at Step Five That Plaintiff Is Capable of Performing Other Work in the National Economy**

Plaintiff puts forth two arguments that the ALJ erred at step five by determining that he could perform other work in the national economy. Pl's. Mem. at 4-5. First, plaintiff contends that the ALJ erroneously determined that plaintiff could perform certain light exertional-level jobs because Grid Rule 202.09 should apply to him, which would require a finding of disabled. *Id.* at 4. Second, plaintiff argues that the ALJ improperly deviated from the Dictionary of Occupational Titles ("DOT") in finding that plaintiff, who is illiterate in English, could perform a medium exertional-level job that requires English-language skills. *Id.* at 5. As explained below, this court rejects plaintiff's argument regarding Grid Rule 202.09, but finds that the ALJ erred in failing to obtain an explanation or persuasive evidence to justify the VE's deviation from the DOT.

### 1. The ALJ Correctly Did Not Apply Grid Rule 202.09 at Step Five

At step five, the burden shifts to the Commissioner to show that the claimant retains the ability to perform other gainful activity. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006). To support a finding that a claimant is not disabled at step five, the Commissioner must provide evidence demonstrating that other work exists in significant numbers in the national economy that the claimant can perform, given his or her age, education, work experience, and RFC. 20 C.F.R. §§ 404.1512(g), 416.912(g). There are two ways for the Commissioner to meet the burden under step five: (a) by the testimony of a VE; or (b) by reference to the grids. *Tackett v. Apfel*, 180 F.3d 1094, 1100-01 (9th Cir. 1999) (citations omitted). But the Commissioner may rely on the grids alone "only when the grids accurately and completely describe the claimant's abilities and limitations." *Id.* at 1102 (internal quotation marks and citations omitted). When a claimant's RFC does not coincide exactly with the "full range" of work in one of the grids' three exertional levels, the Commissioner may not rely solely on the grids and must obtain the testimony of a VE. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

Here, the ALJ determined that plaintiff's "ability to perform all or substantially all of the requirements" of medium work was hindered by additional limitations. AR at 24. To determine the extent to which these additional limitations would affect the jobs plaintiff could do, the ALJ posed the following hypothetical to the VE at the hearing:

> Q: [P]lease assume a hypothetical individual, who . . . was 51 at his onset date, and with a . . . eighth-grade education from Mexico, but is illiterate and unable to communicate in English; and work experience as [a construction worker]. Assume further the individual has the following abilities: lift and carry 50 pounds occasionally and 25 pounds frequently, unlimited sitting ability, stand and walk six hours in

>an eight-hour workday, can only push and pull with the left upper
>extremity, limited to the same pounds as lifting and carrying; can only
>occasionally stoop, kneel, crouch, crawl, climb stairs or ramps; no
>climbing ladders, ropes, or scaffolds; and can only occasionally do
>overhead reaching with his left arm.

*Id.* at 43-44; *see id.* at 24. This is the hypothetical that corresponds with the RFC actually found by the ALJ. *See id.* at 22. The VE testified that, under that hypothetical, the plaintiff would not be able to perform his past relevant work. *Id.* at 44. The plaintiff would, however, be able to do several light exertional level jobs, including sorter, inspector, ticketer/labeler, as well as the medium exertional level job of machine feeder. *Id.* at 44.

    Plaintiff argues that the ALJ erred in identifying multiple light jobs at step five that plaintiff could perform. Pl. Mem. at 4. Specifically, plaintiff contends that, given his age, inability to perform his past work, and illiteracy in English, the ALJ should have applied Grid Rule 202.09 and found plaintiff disabled. Pl. Mem. at 4. Grid Rule 202.09 directs a finding of disabled if the claimant is closely approaching advanced age,[3] he is illiterate or unable to communicate in English, his past relevant work was unskilled, and he has the RFC to perform light work.

    Contrary to plaintiff's contention, Grid Rule 202.09 does not apply to plaintiff for two reasons. First, plaintiff's work history does not fit within the rule's parameters: his past relevant work was semi-skilled, not unskilled. *See* AR at 23; Grid Rule 202.09. Second, even if plaintiff's past relevant work were unskilled, illiteracy or the inability to communicate in English would not render him disabled under the grids because plaintiff's characterization of his RFC is incorrect. The ALJ

---

[3] Ages 50-54 constitute closely approaching advanced age. 20 C.F.R. §§ 404.1563(d), 416.963(d).

9

clearly stated that plaintiff had the RFC to perform medium work with some additional limitations. AR at 22. Therefore, plaintiff's abilities are greater than the capacity limits for light work but less than those for medium work. Plaintiff's inability to perform the full range of medium work does not mean that he only has the RFC to perform light work. Instead, plaintiff can perform some medium, light, and sedentary work. *See* 20 C.F.R. § § 404.1567(c), 416.967(c). Thus, regardless of whether plaintiff is English literate or able to communicate in English, plaintiff is not disabled under the grids. *See* Grid Rules 203.04, 203.05.

### 2. The ALJ Erred in Failing to Obtain an Explanation or Persuasive Evidence to Justify the VE's Deviation from the DOT

Plaintiff contends that the jobs specified by the VE, which the ALJ found plaintiff capable of performing, are inconsistent with plaintiff's inability to understand or speak English, as those jobs are defined by the DOT. *See* Pl's. Mem. at 4-5. The court agrees.

ALJs routinely rely on the DOT "in evaluating whether the claimant is able to perform other work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990) (citations omitted); *see also* 20 C.F.R. §§ 404.1566(d)(1) (DOT is source of reliable job information), 416.966(d)(1) (same). The DOT is the rebuttable presumptive authority on job classifications. *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995). An ALJ may not rely on a VE's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the DOT, and if so, the reasons therefor. *Massachi v. Astrue*, 486 F.3d 1149, 1152-53 (citing SSR 00-4p). But failure to so inquire can be deemed harmless error where there is no apparent conflict or the VE provides sufficient support to justify deviation from the DOT. *Id.* at 1154 n.19. In order for an ALJ to accept a VE's testimony that contradicts the DOT, the record must contain "persuasive evidence to support the deviation." *Id.* at 1153 (citing *Johnson*, 60 F.3d at 1435). Evidence sufficient to permit such a deviation may be either specific

10

findings of fact regarding the claimant's residual functionality, or inferences drawn from the context of the expert's testimony. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1997) (citations omitted).

Here, the VE testified that a hypothetical person with plaintiff's RFC could work as a machine feeder (DOT 699.686-010), sorter (DOT 222.687-014), inspector (DOT 739.687-102), and ticketer/labeler (DOT 229.587-018). AR at 44-45. The ALJ made no inquiries as to whether there was a conflict between the VE's testimony and the DOT. *See generally id.* at 44-45. And in fact there was a conflict.

Of the above listed jobs, the first three require a level 1 language development and the fourth requires a level 2 language development. *See* DOT Nos. 699.686-010, 222.687-014, 739.687-102, 229.587-018). A level 1 language development score assumes a person can "[r]ecognize 2,500 (two- or three-syllable) words," "[r]ead at rate of 95-120 words per minute," and "[c]ompare similarities and differences between words and between series of numbers." *See* DOT, app. C. Level 2 requires a "vocabulary of 5,000-6,000 words[]" and the ability to read "at rate of 190-215 words per minute." *Id.* Additionally, level 2 assumes an ability to write "compound and complex sentences, using cursive style, proper end punctuation, and employing adjectives and adverbs," and to speak "clearly and distinctly with appropriate pauses and emphasis, correct pronunciation, variations in word order, using present, perfect, and future tenses." *Id.* The ALJ determined that plaintiff "is unable to communicate in English." AR at 24. This language limitation was also included in the hypothetical posed to the VE. *Id.* at 43. On its face, the DOT's description of the language development levels required for the jobs is inconsistent with an individual who is "unable to communicate in English."

Thus, the language development requirement of the jobs specified by the VE are plainly inconsistent with plaintiff's abilities as found by the ALJ and posed to the VE, and no explanation was provided by the VE for the deviation from the

11

DOT. Further, there is no information in the record that resolves or even addresses this apparent conflict. The government attempts to argue that persuasive evidence in fact does exist to justify the deviation. *See* Def.'s Mem. at 5-6. But the court's review is limited to the reasons actually cited by the ALJ in her decision, specifically, in finding that plaintiff is capable of performing other jobs in the national economy. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) ("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." (citation omitted)). Accordingly, the ALJ did not meet the Commissioner's step five burden to demonstrate that plaintiff can perform other jobs in the national economy.

## V.
## **REMAND IS APPROPRIATE**

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000) (decision whether to remand for further proceedings turns upon their likely utility). But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke*, 379 F.3d at 595-96; *Harman*, 211 F.3d at 1179-80.

Here, as set out above, remand is required because the ALJ improperly discounted plaintiff's testimony and erred at step five. On remand, the ALJ shall reconsider plaintiff's subjective complaints and either credit plaintiff's testimony or provide clear and convincing reasons supported by substantial evidence for

rejecting it.  As appropriate, the ALJ shall reconsider plaintiff's RFC.  Additionally, the ALJ shall retain a vocational expert, inquire whether his or her testimony conflicts with the DOT, and ask the VE to explain any deviation.  The ALJ shall then determine what work, if any, plaintiff is capable of performing.

## VI.
## CONCLUSION

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.

Dated: March 29, 2013

_____

SHERI PYM
UNITED STATES MAGISTRATE JUDGE